NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDRES SANCHEZ<br><br>                    Plaintiff,<br>      v.<br><br>CAROLYN W. COLVIN,<br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                    Defendant. | Civil Action No. 15-00415 (SDW)<br><br><br>**OPINION**<br><br><br>December 14, 2015 |

**WIGENTON,** District Judge.

Before this Court is Plaintiff Andres Sanchez's ("Plaintiff" or "Sanchez") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") that he is not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act (the "Act"). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, this Court **AFFIRMS** the Commissioner's decision.

**I.     PROCEDURAL AND FACTUAL HISTORY**

   **A.  Procedural History**

1

On September 22, 2011, Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSIB"), alleging disability as of April 15, 2006,[1] based on right knee-hip imbalance, heart problems, right eye blindness, and liver disease. (R. 180–91, 227.) Plaintiff's applications for DIB and SSIB were treated concurrently. (R. 14.) Plaintiff's application was denied both initially and upon reconsideration. (R. 68–109.) Plaintiff's subsequent request for a hearing before an administrative law judge ("ALJ") was granted, and a hearing was held before ALJ Dennis O'Leary ("ALJ O'Leary") on June 21, 2013. (R. 27–67.) Plaintiff and a vocational expert appeared and testified at the hearing. (*Id.*) On August 5, 2013, ALJ O'Leary issued a decision finding that Plaintiff was not disabled and denying his application for DIB and SSIB. (14–22.) On November 25, 2014, the Appeals Council denied Plaintiff's request for review of ALJ O'Leary's August 5, 2013 decision, making it the Commissioner's final decision. (R. 1–6.) Plaintiff now seeks reversal of ALJ O'Leary's decision and asks this Court to grant his DIB and SSIB, or in the alternative, to vacate the final decision and remand the case for a further hearing. (Compl.)

### B. Factual History

#### 1. Personal and Employment History

Plaintiff was 45 years old at the time the instant appeal was filed. (*Id.* ¶ 4.) He completed some high school and has prior work experience as a van and truck driver, and as a shipping receiving clerk. (*Id.*) Plaintiff claims to have ceased working as of August 18, 2011. (R. 227.)

#### 2. Medical History

---

[1] Although the parties' briefs and the ALJ's decision all state that Plaintiff alleges disability as of December 31, 2006, the DIB and SSIB applications of record indicate that Plaintiff alleges disability as of April 15, 2006. (R. 14, 180, 182.)

Numerous medical doctors and healthcare practitioners examined Plaintiff in relation to his disability claim. (R. 263–340.) In addition, both Plaintiff and a vocational expert testified before ALJ O'Leary. (R. 28–67.) The following is a summary of the evidence:

Plaintiff visited Raritan Bay Medical Center ("Raritan Bay") on May 13, 2011, complaining of chest pain. (R. 264.) After his examination, Ivica Vucic, M.D. ("Dr. Vucic") issued a final report concluding that Plaintiff suffered "[m]ild pulmonary arterial enlargement suggest[ing] chronic pulmonary artery hypertension." (R. 280.)

Robert Wood Johnson University Hospital ("RWJUH") admitted Plaintiff on July 19, 2011 and again on July 21, 2011. (R. 287.) Following the July 19th examination, Rajesh N. Geria, M.D. ("Dr. Geria") diagnosed Plaintiff with abdominal pain and cholelithiasis. (R. 292, 304.) When Plaintiff returned to RWJUH on July 21, 2011, Andrew O'Connor, M.D. ("Dr. O'Connor") diagnosed Plaintiff with "chest pain – acute coronary syndrome." (R. 298.)

On December 4, 2011, Samuel Wilchfort, M.D. ("Dr. Wilchfort") of Essex Diagnostic Group issued an x-ray report regarding Plaintiff. (R. 305.) Dr. Wilchfort concluded that Plaintiff's "[r]ight knee film reveals mild medial joint space narrowing. No effusion. No osteoarthritic changes. Patella intact . . . [F]emoral head smooth and intact. Acetabulum normal. The femoral acetabular space intact. No soft tissue calcification." (*Id.*)

On December 12, 2011, Francky Merlin, M.D. ("Dr. Merlin"), performed a consultative examination of Plaintiff, which included a physical and neurological component. (R. 306–08.) The physical examination revealed that Plaintiff experienced antalgic gait, tenderness in his hips and right knee, and that he uses a cane for "ambulation." (R. 307.) Plaintiff stated that he uses a cane outdoors for "walking, standing, and support," and that he can walk around his house without it. (*Id.*) The neurological examination revealed that Plaintiff was alert and responsive to light

touch, pinprick, and vibration. (*Id.*) Dr. Merlin diagnosed Plaintiff with hypertension and polyarthralgia, and found that Plaintiff is able to "sit, stand, walk, carry, hear and speak." (R. 308.)

Steven Meyerson, M.D. ("Dr. Meyerson") conducted an MRI of Plaintiff's lumbar spine on January 10, 2012. (R. 315–18.) Dr. Meyerson reported some developmental narrowing of the mid to lower lumbar canal. (R. 315.) Furthermore, the MRI showed disc herniation at the L2-L3, L3-L4, and L4-L5 levels, and mild canal stenosis at the L3-L4 level. (*Id.*) Dr. Meyerson also conducted an open MRI of Plaintiff's cervical spine. (R. 317–18.) Primarily, Dr. Meyerson found "some developmental narrowing of the cervical canal." (R. 317.) The MRI also showed disc bulging and exerting pressure on the thecal sac at the C2-C3, C3-C4, and C6-C7 levels, and disc herniation at the C4-C5 and C5-C6 levels. (*Id.*)

On January 19, 2012, Mohnish Ramani, M.D. ("Dr. Ramani") examined Plaintiff concerning Plaintiff's right knee pain resulting from an alleged car accident. (R. 319.) The examination showed that Plaintiff had neutral alignment, no soft tissue abnormalities, and no effusion. (R. 320.) Furthermore, Dr. Ramani found Plaintiff suffered moderate lateral joint line tenderness, and maintained normal motor strength and sensation. (*Id.*) Dr. Ramani diagnosed Plaintiff with right knee internal derangement and recommended an MRI, anti-inflammatory medications, ice modality and that Plaintiff avoid "exacerbating activities." (R. 321.)

Plaintiff obtained an MRI of his right knee on April 25, 2012, at the New Jersey Imaging and Diagnostics Center ("NJIDC"), which was administered by Allen C. Pomerantz, M.D. ("Dr. Pomerantz"). (R. 337.) The MRI revealed knee effusion and a "[t]ear of the posterior horn of the medial meniscus." (*Id.*)

Following the MRI, Plaintiff revisited Dr. Ramani for a follow-up appointment on June 7, 2012. (R. 334–36.) At this time, Plaintiff reported that his right knee pain worsened since his

January 19, 2012 visit. (R. 334.) Dr. Ramani found that Plaintiff's right knee range of motion was "0 degrees extension without pain, 130 degrees flexion with pain" and that Plaintiff suffered from moderate medial and lateral "joint line tenderness." (R. 335.) Dr. Ramani discussed surgical treatment options with Plaintiff, and again recommended anti-inflammatory medications, ice modality, and that Plaintiff avoid exacerbating activities. (R. 336.)

On April 25, 2013, Plaintiff visited the Center for Joint and Spine Relief ("The Center"), where he consulted Pain Management Specialist, Dr. Seth Schran ("Dr. Schran"). (R. 338–39.) Plaintiff's chief complaints were pain in his neck, right extremity, and low back. (R. 338.) Plaintiff reported experiencing headaches, right knee stiffness, difficulty sleeping, and occasional dizziness and fatigue. (*Id*.) Following a physical examination, Dr. Schran diagnosed Plaintiff with right cervical radiculopathy, right lumbar radiculopathy, and right knee lateral meniscal tear. (R. 339.) Furthermore, Dr. Schran found that these conditions led to pain and a limited range of motion, which caused Plaintiff to ambulate with a cane. (R. 338.) As a result, Dr. Schran recommended that Plaintiff undergo physical therapy. (R. 339.)

### 3. Function Report

In a self-function report dated March 12, 2012, Plaintiff stated that his daily routine includes eating breakfast and lunch, showering, watching television, reviewing his upcoming doctor appointments, massaging his knee, and sleeping. (R. 253.) Plaintiff also indicated that he goes outside up to twice per day, is able to drive, shop for groceries, and pay bills. (R. 256.) Furthermore, Plaintiff states that he enjoys reading and watching television, and that he visits his mother and speaks with her on the phone. (R. 257.) Lastly, Plaintiff reported that he has difficulty with all physical activities, i.e. lifting, standing, walking, and bending. (R. 257–58.)

### 4. Hearing Testimony

At the hearing before ALJ O'Leary on June 21, 2013, Plaintiff testified about his education, previous employment, ailments, treatments, and daily activities. (R. 36–55.) Plaintiff testified that he can stand for fifteen minutes with the assistance of his cane and walk half a block with his cane before he must sit down. (R. 46.) Plaintiff also stated that he can sit for only fifteen minutes before he must change positions, and that he has difficulty lifting any amount of weight. (R. 47.) Lastly, Plaintiff testified that he is blind in his right eye. (R. 52–54.)

Vocational Expert Patricia Shashony ("Shashony") testified at the administrative hearing to determine whether there exists work in the national economy that someone such as Plaintiff could perform. (R. 54–64.) First, Shashony confirmed ALJ O'Leary's assumption that Plaintiff is unable to perform any of his past relevant work. (R. 55–56.) Second, Shashony opined that there exist several positions, such as ampule sealer, final assembler, and patcher, which a person with limitations similar to Plaintiff could perform. (R. 56–57.) Shashony clarified that an "ampule sealer" packages small products, a "final assembler" is a "small products assembly-type position," and a "patcher" glues insulation on various products. (*Id*.) Shashony testified that these representative jobs are typically performed at the bench level, which allows the worker to sit or stand while performing the job. (R. 57–58.) Lastly, Shashony testified that these jobs require performing repetitive tasks for more than 15% of the workday. (R. 58.)

## II.   LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence

"does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted).

Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla'; it is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "'where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits.'" *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir.

1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

### B. The Five–Step Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 480 (3d. Cir. 2007). If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial

gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910.  If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; SSR 85-28, 96-3p, 96-4p.  An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).  If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).  If, however, the claimant's impairment or combination of impairments

9

does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, the burden shifts to the ALJ at step five to determine whether the claimant is capable of performing an alternative SGA present in the national economy. 20 C.F.R. §§ 404.1520(g)(1) (citing 404.1560(c)), 416.920(g)(1) (citing 416.960(c)); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). At this point in the analysis, the SSA is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§

10

404.1520(a)(4)(v), 416.920(a)(4)(v).

## III. DISCUSSION

At step one of the disability analysis, ALJ O'Leary found that Plaintiff had not engaged in SGA since December 31, 2006, the alleged onset date of disability. (R. 16.) Thus, the analysis proceeds to step two.

At step two, ALJ O'Leary properly found that Plaintiff suffered from the following severe impairments: "cervical herniations with bilateral foraminal stenosis; lumbar herniations with mild canal stenosis; cervical radiculopathy; lumbar radiculopathy; and right knee lateral meniscal tear." (*Id.*) In making this finding, ALJ O'Leary considered the medical evidence, and specifically cited the MRI report and physical examinations performed by Dr. Ramani and Dr. Schran. (R. 16–18.) The evidence shows that Plaintiff suffered from the stated severe impairments as a result of the various herniations and physical ailments recorded by Plaintiff's doctors. (*Id.*)

At step three, ALJ O'Leary properly determined that Plaintiff's impairments did not equal or exceed the impairments included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.1526, 416.920(d), 416.925, and 416.926.) (R. 18.) ALJ O'Leary properly found that Plaintiff's impairments did not meet or equal the criteria of listing 1.02 for major dysfunction of a joint because "the evidence does not demonstrate that [Plaintiff] has the [requisite] degree of difficulty in ambulating . . . ." (*Id.*) Furthermore, ALJ O'Leary correctly determined that Plaintiff's impairments did not meet or equal the criteria of listing 1.04. (*Id.*) In support of his finding, ALJ O'Leary found:

> [T]he evidence fails to establish a disorder of the spine which has resulted in comprise of a nerve root (including the cauda equine) or the spinal cord with evidence of nerve root compression or spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in an inability to ambulate effectively, as defined in 1.00B2b.

(*Id*.)  Next, ALJ O'Leary also correctly found that the evidence failed to meet the requirements of listing 2.02, "as [Plaintiff's] remaining vision in the better eye (left eye) is 20/70 without correction [] and not 20/2000 or less . . . ."  (*Id*.)

Before undergoing the step four analysis, ALJ O'Leary determined Plaintiff's RFC.  (R. 18–20.)  ALJ O'Leary properly found that Plaintiff has the RFC to perform sedentary work, except that he is "limited to simple and repetitive, unskilled work due to reduced concentration secondary to pain."  (R. 18.)  Furthermore, Plaintiff cannot work at heights or with machinery due to his reduced vision, and he must "alternate between sitting and standing at his election and cannot lift more than five pounds."  (*Id*.)  In making this determination, ALJ O'Leary considered all of Plaintiff's symptoms consistent with the objective medical evidence and other evidence pursuant to 20 C.F.R. 404.1529 and 416.929, and SSRs 96-4p and 96-7p.  (*Id*.)  ALJ O'Leary also considered opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.  (*Id*.)  ALJ O'Leary cited to the MRI results, doctor treatment notes and diagnoses, and the residual functional capacity assessment.  (R. 18–20.)  ALJ O'Leary appropriately weighted the value of the medical records before him.  (*Id*.)  In light of the substantial evidence reviewed by ALJ O'Leary, this Court finds that he properly determined Plaintiff's RFC.

At step four, ALJ O'Leary properly found that Plaintiff is unable to perform any of his past relevant work.  (R. 21.)  Vocational Expert Shashony testified at the hearing that Plaintiff performed all past relevant work at a medium or heavy exertional level and was semi-skilled.  (*Id*. R. 55–59.)  ALJ O'Leary correctly determined that Plaintiff's RFC precludes his performance of this type of work.

Lastly, at step five, ALJ O'Leary properly found that Plaintiff can perform work that exists in significant numbers in the national economy. (R. 21.) ALJ O'Leary considered Plaintiff's age, education, work experience, and RFC, as well as the vocational expert's testimony. (R. 21–22.) The vocational expert testified that Plaintiff could satisfy the requirements of the representative occupations of a packaging/ampule sealer, small product assembler, and patcher. (*Id*.) These positions exist in the aggregate of thousands of jobs nationally. Because Plaintiff is capable of performing work that exists in significant numbers in the national economy, Plaintiff is not disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act.

### IV. CONCLUSION

Because this Court finds that ALJ O'Leary's decision is supported by substantial evidence in the record, the Commissioner's determination is **AFFIRMED**.

s/ *Susan D. Wigenton*  
**SUSAN D. WIGENTON**  
**UNITED STATES DISTRICT JUDGE**

Orig:  Clerk  
cc:    Parties